```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION
```

CHSPSC, LLC,                         *

    Plaintiff,                   *

vs.                                  *
                                     CASE NO. 4:15-CV-133 (CDL)
ST. FRANCIS HOSPITAL, INC.,          *

    Defendant.                   *

_____

O R D E R

This action arises from the collapse of negotiations for the acquisition of St. Francis Hospital, Inc. by CHSPSC, LLC. It was public knowledge prior to and during these negotiations that St. Francis faced a financial crisis due to accounting and budget miscalculations and that this crisis provided the motivation for the sale of the long-time provider of hospital services. But CHSPSC alleges in its complaint that representatives of St. Francis misrepresented and hid legal and regulatory issues that went beyond St. Francis's well-known financial troubles. CHSPSC claims that St. Francis hid these problems to induce CHSPSC to make a $5 million deposit toward the purchase of the hospital. After it discovered some of these additional problems, CHSPSC continued its negotiations with St. Francis, but the acquisition eventually fell through. CHSPSC brings the present action to recover its $5 million deposit plus

compensatory damages caused by St. Francis's alleged fraud and breach of contract.

St. Francis has filed a motion to dismiss CHSPSC's complaint in its entirety (ECF No. 8).  For the reasons explained in the remainder of this Order, the Court grants St. Francis's motion to dismiss CHSPSC's premature breach of contract claim regarding St. Francis's refusal to refund CHSPSC's deposit, denies St. Francis's motion to dismiss the breach of contract claim regarding its alleged failure to abide by the exclusive dealing provision of the contract, and denies St. Francis's motion to dismiss the fraud claim.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556. "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual

2

proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## CHSPSC'S FACTUAL ALLEGATIONS

CHSPSC alleges the following facts in support of its claims. The Court must accept these allegations as true for purposes of the pending motion.

In November 2014, St. Francis, a hospital located in Columbus, Georgia, publicly announced that it found itself in a serious financial predicament due to accounting and budgeting miscalculations. These financial problems motivated St. Francis to explore drastic measures including the sale of the hospital. CHSPSC became interested in purchasing the hospital and began discussions with St. Francis. During these discussions, CHSPSC claims that it asked St. Francis whether the hospital's problems were purely financial or if the hospital also had significant legal or regulatory problems. According to CHSPSC, St. Francis denied that it had any legal or regulatory problems, although it knew that it was potentially violating Medicare and the Department of Housing and Urban Development ("HUD") regulations. CHSPSC also alleges that St. Francis knew that HUD's Office of the Inspector General was auditing the hospital.

CHSPSC claims that at a meeting on January 8, 2015, it specifically asked whether St. Francis had any legal or

3

regulatory issues, and St. Francis expressly denied the existence of any such issues. After the meeting, St. Francis discontinued discussions with CHSPSC as a potential buyer and began exclusive negotiations with Piedmont Healthcare. When the Piedmont deal eventually collapsed, St. Francis resumed talks with CHSPSC. CHSPSC alleges that St. Francis told CHSPSC that the Piedmont deal did not go through solely because Piedmont was unwilling to assume St. Francis's debt, even though St. Francis allegedly knew that Piedmont withdrew from the negotiations because it learned of St. Francis's substantial legal and regulatory problems, including the HUD audit.

As CHSPSC conducted its preliminary due diligence, it claims that St. Francis continued to misrepresent that the hospital's problems were purely financial and denied that the hospital had any regulatory or legal problems. CSHSPC specifically alleges that its due diligence requests covered issues such as the HUD audit, but that St. Francis failed to disclose the audit.

After CHSPSC completed its preliminary due diligence, the parties, on April 9, 2015, entered into an agreement regarding further negotiations for the acquisition of the hospital. The relevant provisions of the agreement provide that: (1) CHSPSC would make a $5 million deposit toward the purchase of the hospital, and (2) St. Francis would negotiate exclusively with

4

CHSPSC until June 30, 2015. The agreement, which included the conditions for a refund of the $5 million deposit, states:

> In the event that CHS does not close the transaction without cause, then CHS shall forfeit the Initial Deposit (but not the Additional Deposit). Otherwise, the Initial Deposit and the Additional Deposit shall be refunded to CHS as a breakup fee if the transaction does not close and St. Francis closes a transaction with another party.

Compl. Ex. A, Letter Agreement, ECF No. 2-2 at 8.

CHSPSC continued to conduct its due diligence over the next several months, and St. Francis did not disclose the hospital's legal and regulatory problems, including the HUD audit. CHSPSC claims that in June 2015 it discovered for the first time that the hospital had potentially violated Medicare and HUD regulations in four significant ways over the course of several years.

On June 30, 2015, the parties met to discuss the potential regulatory violations that CHSPSC had discovered. At that meeting, CHSPSC demanded that St. Francis report its regulatory violations to federal authorities. CHSPSC also extended the period for exclusive negotiations under the agreement to allow CHSPSC to do additional due diligence. St. Francis contends that by modifying the agreement to extend the period for exclusive negotiations after it learned of the additional legal and regulatory problems, CHSPSC ratified any alleged fraud and waived its fraud claim.

5

Ten days later, on July 10, 2015, CHSPSC discovered for the first time that HUD's Office of the Inspector General was auditing St. Francis. Shortly after this discovery, the negotiations collapsed. CHSPC demanded a return of its $5 million deposit and payment of its expenses. St. Francis refused, contending that the agreement did not require a return of the deposit until it consummated a deal with some other buyer.

## DISCUSSION

### I. Fraud Claim

CHSPSC contends that it was defrauded by St. Francis when St. Francis misrepresented, among other things, (1) the hospital's lack of legal or regulatory problems, (2) the HUD audit, and (3) the reason that Piedmont withdrew from the acquisition. St. Francis argues that the fraud claim should be dismissed because CHSPSC waived it by ratifying the agreement after it learned of the alleged fraud, and because CHSPSC has failed to allege the facts in support of the claim with sufficient particularity.

A. Waiver of Fraud Claim

A defrauded party waives its fraud claim if it has "*full knowledge* of the" fraud and then "acts in a manner inconsistent with a repudiation of the contract." *Denim N. Am. Holdings, LLC v. Swift Textiles, LLC*, 532 F. App'x 853, 859 (11th Cir.

6

2013)(emphasis added) (quoting *Brooks v. Hooks*, 221 Ga. 229, 235, 144 S.E.2d 96, 100 (1965)).  St. Francis argues that CHSPSC learned of the alleged fraud prior to agreeing to modify the contract to extend the exclusive negotiation period.  By proceeding with the contract modification and continuing the negotiations while fully aware that St. Francis had misrepresented its legal and regulatory troubles, CHSPSC, according to St. Francis, waived any fraud claim arising from St. Francis's failure to disclose fully its legal and regulatory issues.  CHSPSC responds that it was not fully aware of the complete extent of the fraud.  Specifically, it maintains that it knew only of potential Medicare and HUD violations—not the HUD audit—when it agreed to the extension of the exclusive negotiation provision on June 30, 2015.  It was not until ten days later, on July 10, 2015, that CHSPSC learned for the first time that HUD was auditing St. Francis.  The deal then collapsed.  It is not clear why CHSPSC was comfortable continuing due diligence after learning of the Medicare and HUD regulation violations, but then found the HUD audit a deal breaker.  CHSPSC will eventually have to establish why knowledge of the alleged regulatory violations did not make a difference in their decision to continue negotiations, but the HUD audit did.  But that is an issue for summary judgment.  At the motion

to dismiss stage, CHSPSC has sufficiently alleged that it made a difference.

"Under Georgia law, whether a party has waived its right to rescind an agreement is ordinarily a question of fact for the jury to decide." *Id.* at 859. Although the issue can be decided as a matter of law, "the facts and circumstances essential to the waiver issue [must be] clearly established." *Id.* (quoting *Forsyth Cty. v. Waterscape Servs., LLC*, 303 Ga. App. 623, 630, 694 S.E.2d 102, 110 (2010)). Based on CHSPSC's allegations in its complaint, which the Court must accept as true at this stage of the litigation, the Court cannot conclude that those allegations clearly establish that CHSPSC has ratified the alleged fraud and waived its claim. Accordingly, St. Francis's motion to dismiss the fraud claim must be denied.

B.  Rule 9(b) Particularity Requirement

St. Francis also maintains that CHSPSC has failed to allege its fraud claim with sufficient particularity in violation of Federal Rule of Civil Procedure 9(b). This argument is unpersuasive. CHSPSC has sufficiently stated the facts upon which its fraud claim is based. If those facts are proven, CHSPSC will have established the essential elements of a fraud claim under Georgia law. Accordingly, St. Francis's motion to dismiss the fraud claim pursuant to Rule 9(b) is denied.

**II. Breach of Contract Claims**

CHSPSC contends that St. Francis breached the agreement that the parties entered into on April 9, 2015, in two ways: (1) by failing to refund CHSPSC's $5 million deposit after the deal collapsed, and (2) by engaging in negotiations for the sale of St. Francis with other potential buyers during the period that St. Francis had agreed to negotiate exclusively with CHSPSC.

    A.    <u>Breach of the Contract Clause Requiring Refund of the Initial Deposit</u>

The parties' agreement states:

> In the event that CHS does not close the transaction without cause, then CHS shall forfeit the Initial Deposit (but not the Additional Deposit). Otherwise, the Initial Deposit and the Additional Deposit shall be refunded to CHS as a breakup fee if the transaction does not close and St. Francis closes a transaction with another party.

Compl. Ex. A, Letter Agreement, ECF No. 2-2 at 8.

CHSPSC alleges that it had just cause not to close the transaction. Therefore, the Court assumes for purposes of the present motion that CHSPSC has not forfeited its deposit pursuant to the terms of the contract. But the agreement does not authorize the return of the deposit immediately upon the termination of negotiations. The agreement plainly states that if the negotiations are terminated for cause, CHSPSC is entitled to a refund of the deposit when two conditions are met: (1) the deal between CHSPSC and St. Francis does not close, **and**

9

(2) St. Francis closes a transaction with another buyer. The first condition has been met because the deal between St. Francis and CHSPSC collapsed, but CHSPSC does not allege that the second condition—that St. Francis has closed a transaction with another buyer—has been met. Thus, under the plain terms of the contract, CHSPSC is not yet entitled to a refund. "The cardinal rule of [contract] construction is to ascertain the intention of the parties." *Duffett v. E&W Props., Inc.*, 208 Ga App. 484, 486, 430 S.E.2d 858, 859 (1993) (alteration in original) (quoting O.C.G.A. § 13-2-3). The unambiguous language in the contract reveals that intention. Here, the parties clearly stated under what conditions a refund would be made. Those conditions have not yet occurred. Accordingly, St. Francis has not breached the clause regarding refund of the deposit.

Whether CHSPSC will eventually be entitled to a return of its deposit is not ripe for adjudication. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). Because CHSPSC's right to relief is contingent on a future event that may or may not occur—whether St. Francis sells the hospital to another buyer—CHSPSC's claim to recover the

10

deposit is not presently ripe. Accordingly, the Court dismisses that claim.

    B.    <u>Breach of the Contract Clause Requiring St. Francis to Negotiate Exclusively with CHSPSC</u>

CHSPSC also alleges that St. Francis breached the provision of the agreement providing that St. Francis would negotiate exclusively with CHSPSC and not share any confidential information with other potential buyers. St. Francis argues that the claim should be dismissed because the complaint consists of bare legal conclusions without factual allegations to support them. St. Francis's argument is not supported by a review of the factual allegations contained in the complaint.

The complaint contains ample factual allegations to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint alleges that St. Francis discussed selling the hospital with other potential buyers and shared confidential information with other buyers during the period that St. Francis had agreed to negotiate exclusively with CHSPSC. Compl. ¶¶ 67, 81. Although the complaint does not identify who St. Francis negotiated with or what precise confidential information St. Francis shared, those details, which very likely are within the exclusive control of St. Francis, are not necessary to satisfy the pleading standard that requires "a short and plain statement . . . showing that the

11

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that the claim is plausible. *See Twombly*, 550 U.S. at 570.

St. Francis also argues that the complaint does not allege legally cognizable damages for breach of the exclusivity provision of the agreement. The Court disagrees. Without commenting specifically on the nature of damages that are available to CHSPSC if it is able to prove that such damages were proximately caused by St. Francis's breach of the exclusivity provision in the agreement, the Court finds that at a minimum CHSPSC has alleged a claim for damages here. Accordingly, St. Francis's motion to dismiss the breach of contract claim based on the exclusivity provision is denied.[1]

## CONCLUSION

The Court dismisses CHSPSC's breach of contract claim arising from St. Francis's refusal to refund the deposit because the claim is not ripe for adjudication. St. Francis's motion to dismiss is denied as to the remaining claims. (ECF No. 8).

The stay in this action is lifted. Within 21 days of today's order, the parties shall submit to the Court a joint

---

[1] St. Francis also seeks dismissal of CHSPSC's claim for attorneys' fees and litigation expenses because, according to St. Francis, all of the underlying substantive claims (for fraud and breach of contract) must be dismissed. But, as discussed above, CHSPSC's claims for fraud and breach of the contract clause requiring exclusivity withstand the motion to dismiss. The Court therefore denies St. Francis's motion to dismiss the claim for attorneys' fees and expenses.

proposed scheduling order that complies with the previously issued Rules 16/26 order (ECF No. 10).

IT IS SO ORDERED, this 10th day of November, 2015.

                                            S/Clay D. Land
                                            CLAY D. LAND
                                            CHIEF U.S. DISTRICT COURT JUDGE
                                            MIDDLE DISTRICT OF GEORGIA