IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CHSPSC, LLC,

       Plaintiff,

v.

ST. FRANCIS HOSPITAL, INC.,

       Defendant.

CASE NO. 4:15-CV-133 (CDL)

## DEFENDANT ST. FRANCIS HOSPITAL'S ANSWER TO CHSPSC'S COMPLAINT

Defendant St. Francis Hospital, Inc. ("St. Francis"), through its undersigned counsel of record, hereby timely files this Answer and Counterclaim to Plaintiff CHSPSC, LLC's ("CHSPSC") Complaint.

## INTRODUCTION

St. Francis strongly denies the claims of fraud and breach of contract alleged in CHSPSC's Complaint. Throughout the course of negotiations between St. Francis and CHSPSC for the acquisition of St. Francis, St. Francis acted with transparency and endeavored to disclose material information of which it was aware to CHSPSC. St. Francis specifically informed CHSPSC of the HUD-OIG audit that CHSPSC alleges St. Francis did not disclose. In fact, St. Francis disclosed the HUD-OIG audit to CHSPSC on at least two occasions and as early as April 2015. Further, on or before March 21, 2015, three weeks before CHSPSC executed the Letter Agreement and funded the initial $5 million deposit, St. Francis informed CHSPSC of other potential regulatory compliance violations that could subject St. Francis to financial liability. CHSPSC responded that it was not concerned about such issues because it had a team in place to

handle regulatory compliance issues, was experienced dealing with the government on such matters, and could settle potential violations on a satisfactory basis.

CHSPSC, a sophisticated entity that had acquired hospitals in far worse financial, legal, and regulatory shape than St. Francis, was well aware of the financial condition of St. Francis prior to executing the Letter Agreement and funding the initial $5 million deposit. Specifically, prior to funding the Initial Deposit, St. Francis informed CHSPSC of material misrepresentations in St. Francis's financial statements, as well as St. Francis's disclosure of those misstatements to HUD. Accordingly, the allegations in CHSPSC's Complaint that St. Francis intentionally withheld material information relating to the transaction are completely unfounded.

## NATURE OF THE ACTION

St. Francis responds to the separately numbered paragraphs in the Complaint as follows. To the extent the headings and subheadings in the Complaint allege facts, they are denied. All allegations in the Complaint not specifically admitted herein are denied.

1.      In response to the first sentence in Paragraph 1, St. Francis admits that CHSPSC's Complaint concerns the aborted acquisition of St. Francis, a hospital in Columbus, Georgia, but denies that CHSPSC is entitled to any of the relief requested in the Complaint and denies the allegations of fraud and breach of contract in the Complaint. In response to the second sentence in Paragraph 1, St. Francis admits that CHSPSC spent money and time negotiating the proposed acquisition of St. Francis but denies that negotiations lasted seven months and denies that CHSPSC negotiated in good faith. In response to the third sentence in Paragraph 1, St. Francis admits that the parties entered into a Letter Agreement, which is a written document that speaks for itself as to its content and legal effect. St. Francis denies any other allegations in the third

sentence in Paragraph 1.  St. Francis admits the allegations in the fourth sentence in Paragraph 1.

St. Francis denies all allegations in Paragraph 1 not expressly admitted.

2.      St. Francis denies the allegations in Paragraph 2.

3.      St. Francis denies the allegations in the first sentence in Paragraph 3.  In further

response to the first sentence in Paragraph 3, St. Francis has no duty to refund CHSPSC's $5

million deposit, and the Court dismissed CHSPSC's claim that St. Francis breached the Letter

Agreement by not refunding the Initial Deposit.  In response to the second sentence in Paragraph

3, St. Francis admits that CHSPSC is suing St. Francis, and based on the allegations in the

Complaint, is seeking to recover $5 million, the costs and expenses CHSPSC incurred

throughout the negotiation process, punitive damages, and the fees and expenses of bringing this

action; however, St. Francis denies the allegations in the Complaint and denies that CHSPSC is

entitled to the relief requested.  St. Francis denies all allegations in Paragraph 3 not expressly

admitted.

**PARTIES, JURISDICTION AND VENUE**

4.      In response to Paragraph 4, St. Francis admits that CHSPSC is a limited liability

company incorporated in Delaware, with its principal place of business in Brentwood,

Tennessee.  In further response to Paragraph 4, St. Francis lacks knowledge or information

sufficient to form a belief as to the truth of the allegation that CHSPSC provides management

and consulting services to its affiliated hospitals and therefore denies that allegation.  St. Francis

denies all allegations in Paragraph 4 not expressly admitted.

5.      St. Francis admits the allegations in Paragraph 5.

6.      The first sentence in Paragraph 6 contains a legal conclusion to which no response

is required.  In response to the second sentence in Paragraph 6, St. Francis admits that

CHS/Community Health Systems, Inc. is a Delaware corporation with its principal place of business in Tennessee; however, St. Francis lacks knowledge or information sufficient to form a belief as to the truth of the allegation in the second sentence of Paragraph 6 that CHSPSC's sole member is CHS/Community Health Systems, Inc., and therefore denies that allegation. St. Francis denies all allegations in Paragraph 6 not expressly admitted.

7.      The first sentence in Paragraph 7 contains a legal conclusion to which no response is required. In response to the second sentence in Paragraph 7, St. Francis admits that this action, based on the allegations in the Complaint, is a dispute between CHSPSC (a citizen of Delaware and Tennessee) and St. Francis (a citizen of Georgia) and admits that CHSPSC is seeking amounts in excess of $75,000; however, St. Francis denies that CHSPSC is entitled to any of the relief requested. St. Francis denies all allegations in Paragraph 7 not expressly admitted.

8.      The first sentence in Paragraph 8 contains a legal conclusion to which no response is required. St. Francis admits the allegations in the second sentence of Paragraph 8.

## FACTS

9.      The allegations in Paragraph 9 reference a press release, which is a written document that speaks for itself. St. Francis denies all allegations in Paragraph 9 that are inconsistent with the press release.

10.     In response to the first sentence in Paragraph 10, St. Francis admits that Pier Holcombe contacted Bo Bradley on or around December 22, 2014 to ask whether St. Francis was investigating a potential sale of St. Francis. St. Francis admits the allegations in the second sentence in Paragraph 10. St. Francis admits the allegations in the third sentence in Paragraph 10. St. Francis denies all allegations in Paragraph 10 not expressly admitted.

11.     In response to Paragraph 11, St. Francis admits that it executed a Confidentiality Agreement with CHSPSC in December 2014.  The Confidentiality Agreement referenced in Paragraph 11 is a written document that speaks for itself as to its content and legal effect.  St. Francis denies all allegations in Paragraph 11 not expressly admitted and that are inconsistent with the Confidentiality Agreement.

12.     In response to the first sentence in Paragraph 12, St. Francis admits that Bradley had several phone calls with CHSPSC representatives leading up to the initial meeting between St. Francis and CHSPSC on January 8, 2015.  St. Francis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second and third sentences in Paragraph 12 and therefore denies those allegations.  St. Francis denies all allegations in Paragraph 12 not expressly admitted.

13.     St. Francis admits the allegations in Paragraph 13, except for the allegation that the meeting on January 8, 2015 lasted two hours, which St. Francis denies.

14.     In response to the first sentence in Paragraph 14, St. Francis admits that it discussed its misstated financials with CHSPSC during the January 8, 2015 meeting.  In response to the second sentence in Paragraph 14, St. Francis admits that Hawkins inquired as to the financial errors but denies that Hawkins made a specific inquiry regarding "significant legal or regulatory problems."  St. Francis denies all allegations in Paragraph 14 not expressly admitted.

15.     St. Francis denies the allegations in Paragraph 15.

16.     St. Francis denies the allegations in the first sentence in Paragraph 16.  St. Francis denies the allegations in the second sentence in Paragraph 16.  In response to the third sentence in Paragraph 16, St. Francis admits that, on January 7, 2015, the Department of Housing and Urban Development ("HUD") Office of the Inspector General ("OIG") informed St. Francis via

letter that it would undertake an audit of St. Francis.  The January 7, 2015 HUD-OIG letter is a written document that speaks for itself; St. Francis denies all allegations in the third sentence in Paragraph 16 that are inconsistent with the January 7th letter.  St. Francis denies all allegations in Paragraph 16 not expressly admitted.

17.     St. Francis denies the allegations in the first sentence in Paragraph 17.  St. Francis admits the allegations in the second sentence in Paragraph 17.  St. Francis denies the allegations in the third sentence in Paragraph 17.

18.     St. Francis denies the allegations in Paragraph 18.

19.     St. Francis admits the allegations in the first sentence in Paragraph 19.  St. Francis denies the allegations in the second sentence in Paragraph 19 to the extent it refers to the audit at issue in this action.  To the extent the second sentence in Paragraph 19 is intended as a broad and general statement about what action CMS may take in any given case, St. Francis lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence in Paragraph 19 and therefore denies those allegations.  St. Francis denies all allegations in Paragraph 19 not expressly admitted.

20.     St. Francis denies the allegations in Paragraph 20.

21.     The allegations in Paragraph 21 reference a January 15, 2015 newspaper article, which is a written document that speaks for itself.  St. Francis denies all allegations in Paragraph 21 that are not consistent with the January 15, 2015 newspaper article.

22.     In response to the first sentence in Paragraph 22, St. Francis admits that shortly after January 9, 2015, Bradley informed Ken Hawkins that St. Francis entered into exclusive negotiations with Piedmont.  St. Francis lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in Paragraph 22 and therefore denies those allegations.  St. Francis denies all allegations in Paragraph 22 not expressly admitted.

23.      In response to the first sentence in Paragraph 23, St. Francis admits Bradley informed CHSPSC in early March that the exclusivity arrangement with Piedmont ended.  In response to the second sentence in Paragraph 23, St. Francis admits Bradley informed CHSPSC that Piedmont was unwilling to assume St. Francis's debt due to the effect such an assumption would have on Piedmont's credit rating.  In response to the third sentence in Paragraph 23, St. Francis admits Bradley expressed to CHSPSC that St. Francis was interested in renewing negotiations with CHSPSC but denies Bradley expressed interest in "accelerating" negotiations.  St. Francis denies all allegations in Paragraph 23 not expressly admitted.

24.      St. Francis denies the allegations in Paragraph 24.

25.      In response to the first sentence in Paragraph 25, St. Francis admits that St. Francis representatives and CHSPSC representatives met in Columbus, Georgia on March 12, 2015 but denies all other allegations in the first sentence in Paragraph 25.  St. Francis admits the allegations in the second and third sentences in Paragraph 25.

26.      St. Francis denies the allegations in Paragraph 26.

27.      St. Francis denies the allegations in Paragraph 27.

28.      In response to the first sentence in Paragraph 28, St. Francis admits that its representatives discussed St. Francis's financial misstatements and potential liquidity problems at the March 12, 2015 meeting with CHSPSC, but St. Francis denies all other allegations in the first sentence in Paragraph 28.  St. Francis denies the allegations in the second sentence in Paragraph 28.  St. Francis denies all allegations in Paragraph 28 not expressly admitted.

29.     In response to the first sentence in Paragraph 29, St. Francis admits that the parties agreed to continue negotiations following the March 12, 2015 meeting.  In response to the second sentence in Paragraph 29, St. Francis admits that CHSPSC provided a list of due diligence items, which is a written list that speaks for itself.  In further response to the second sentence in Paragraph 29, on March 13, 2015, CHSPSC prioritized select items on the due diligence list it wished to review first in order to evaluate a potential acquisition.  In response to the third sentence in Paragraph 29, St. Francis admits it agreed on or around March 13, 2015 to provide access to the prioritized items on CHSPSC's due diligence list by uploading the information and documents to a data room as the information was gathered and became available for uploading.  St. Francis denies all allegations in Paragraph 29 not expressly admitted.

30.     St. Francis denies the allegations in Paragraph 30.

31.     St. Francis admits the allegations in the first sentence in Paragraph 31.  St. Francis denies the allegations in the second sentence in Paragraph 31.

32.     In response to the first sentence in Paragraph 32, St. Francis admits that Roach and Hembree had on-going discussions regarding the transaction beginning on April 15, 2015, which included discussion regarding St. Francis's relationship with HUD and communications between St. Francis and HUD.  In response to the second sentence in Paragraph 32, St. Francis denies that Hembree intentionally omitted any mention of the audit; in fact, Hembree expressly told Roach and another CHSPSC representative, Jeff Mullis, that HUD initiated an audit as a result of St. Francis's misstated financial statements.  St. Francis denies all allegations in Paragraph 32 not expressly admitted.

33.     St. Francis admits the allegations in Paragraph 33.

34.     In response to the allegations in Paragraph 34, St. Francis states that the Letter Agreement is a written document that speaks for itself as to its content and legal effect.  St. Francis denies all allegations in Paragraph 34 that are not consistent with the terms of the Letter Agreement.

35.     In response to the allegations in Paragraph 35, St. Francis states that the Letter Agreement is a written document that speaks for itself as to its content and legal effect.  St. Francis denies all allegations in Paragraph 35 that are not consistent with the terms of the Letter Agreement.

36.     In response to the first sentence in Paragraph 36, St. Francis admits that CHSPSC paid the Initial Deposit on April 10, 2015; St. Francis denies all other allegations in the first sentence in Paragraph 36.  St. Francis denies the allegations in the second sentence in Paragraph 36.

37.     Upon information and belief, St. Francis admits the allegations in Paragraph 37, except for the allegation that CHSPSC incurred "substantial cost" in due diligence, as to which St. Francis lacks knowledge or information sufficient to form a belief as to the truth of that allegation and therefore denies that allegation.

38.     St. Francis denies the allegations in Paragraph 38.

39.     St. Francis admits the allegations in the first sentence in Paragraph 39.  St. Francis denies the allegations in the second sentence in Paragraph 39.  St. Francis denies the allegations in the third sentence in Paragraph 39.

40.     In response to Paragraph 40, the allegations in Paragraph 40 misconstrue the contents of the referenced email from John Bodine, which is a written document that speaks for itself.  St. Francis denies all allegations in Paragraph 40 inconsistent with the referenced email.

41.    In response to the first sentence in Paragraph 41, St. Francis admits that Thayer met with Hussey in Columbus, Georgia and requested, if it would not burden CHSPSC, that Mullis be removed or replaced because he was being disruptive.  St. Francis denies the allegations in the second sentence in Paragraph 41.  St. Francis denies the allegations in the third sentence in Paragraph 41.  St. Francis denies all allegations in Paragraph 41 not expressly admitted.

42.    In response to the first sentence in Paragraph 42, St. Francis denies that it "attempted to hide and obfuscate its legal problems."  In further response to the first sentence in Paragraph 42, St. Francis denies that CHSPSC did not know of St. Francis's potential legal and regulatory compliance issues prior to June 2015.  CHSPSC knew of potential legal and regulatory compliance issues at St. Francis as early as March 21, 2015, which St. Francis disclosed to CHSPSC prior to executing the Letter Agreement.  In response to the second sentence in Paragraph 42, St. Francis admits that CHSPSC knew St. Francis's potential legal and regulatory issues could expose St. Francis to financial liability; however, CHSPSC expressed no concern upon learning of the potential legal and regulatory compliance issues and even reassured St. Francis that CHSPSC was well equipped to handle such issues.  St. Francis denies all allegations in Paragraph 42 not expressly admitted.

43.    St. Francis denies the allegations in Paragraph 43.

44.    St. Francis denies the allegations in Paragraph 44.

45.    In response to the first sentence in Paragraph 45, St. Francis admits that CHSPSC conducted due diligence regarding St. Francis's compliance program; however, St. Francis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of Paragraph 45 and therefore denies same.  St. Francis lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in the second sentence in Paragraph 45 and therefore denies those allegations.  St. Francis denies all allegations in Paragraph 45 not expressly admitted.

46.     In response to the first sentence in Paragraph 46, St. Francis admits that Michele Madison and Rick Lowe (St. Francis's Chief Administrative Officer) conferred with Matt Pierce and other individuals on or around April 20, 2015.  In response to the second sentence in Paragraph 46, St. Francis admits that Matt Pierce outlined the types of due diligence documents CHSPSC requested related to compliance but denies Pierce specifically mentioned government investigations.  In response to the third sentence in Paragraph 46, St. Francis lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same. St. Francis denies all allegations in Paragraph 46 not expressly admitted.

47.     St. Francis denies the allegations in Paragraph 47.

48.     St. Francis lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in Paragraph 48 and therefore denies same.  In response to the second sentence in Paragraph 48, St. Francis admits that, on or around May 6, 2015, Pierce and his compliance team conferred with Madison and Lowe.  In response to the third sentence in Paragraph 48, St. Francis admits that Madison and Lowe informed Pierce and his compliance team that as due diligence progressed St. Francis would produce responsive documents to CHSPSC's due diligence requests.  St. Francis denies the allegations in the fourth sentence in Paragraph 48.  St. Francis denies all allegations in Paragraph 48 not expressly admitted.

49.     In response to the first sentence in Paragraph 49, St. Francis admits that, on or around May 6, 2015, Pierce and his compliance team conferred with Madison and Lowe, and

Madison and Lowe informed Pierce and his compliance team that as due diligence progressed St. Francis would produce responsive documents to CHSPSC's due diligence requests. St. Francis denies the allegations in the second sentence in Paragraph 49. St. Francis denies all allegations in Paragraph 49 not expressly admitted.

50.     In response to the first and second sentences in Paragraph 50, the allegations misconstrue an email, which is a written document that speaks for itself. St. Francis denies the allegations in the first and second sentences in Paragraph 50 that are inconsistent with the referenced email and deny that Mr. Bodine made any false statements in the referenced email. St. Francis denies the allegations in the third sentence in Paragraph 50. St. Francis denies all allegations in Paragraph 50 not expressly admitted.

51.     In response to the first sentence in Paragraph 51, St. Francis admits that, on or around June 26, 2015, CHSPSC requested that St. Francis provide additional information regarding HUD loans and HUD communications; this request is a written document that speaks for itself, and St. Francis denies the allegations in Paragraph 51 that are inconsistent with CHSPSC's written request. St. Francis further states that CHSPSC's request was made in the context of weekly calls between St. Francis, CHSPSC, and HUD, when the parties discussed a variety of due diligence items. In response to the second sentence in Paragraph 51, the allegations misconstrue St. Francis's July 8, 2015 written response to CHSPSC's request, which speaks for itself. St. Francis's written response also was made in the context of the weekly calls between St. Francis, CHSPSC, and HUD, when the parties discussed a variety of due diligence items. St. Francis's written response included all information requested in light of the recent communications with HUD and CHSPSC, according to St. Francis's understanding of the scope of CHSPSC's request. St. Francis denies all allegations in Paragraph 51 not expressly admitted.

52.     In response to the first sentence in Paragraph 52, St. Francis admits that Madison, Bodine, Bradley, Thayer, and other St. Francis representatives met with CHSPSC representatives in Brentwood, Tennessee to discuss the acquisition of St. Francis, including potential regulatory compliance issues, St. Francis's liquidity crisis, and a hospital management agreement.  During the meeting, St. Francis requested an additional deposit of $3 million, which CHSPSC was obligated to provide St. Francis under the terms of the Letter Agreement.  In response to the second sentence in Paragraph 52, St. Francis admits that it discussed the voluntary disclosure of certain regulatory violations to the relevant federal authorities but otherwise denies the allegations in the second sentence in Paragraph 52.  St. Francis denies all allegations in Paragraph 52 not expressly admitted.

53.     St. Francis denies the allegations in Paragraph 53.

54.     In response to the allegations in the first sentence in Paragraph 54, St. Francis admits it disclosed it would have a liquidity event by the end of July.  In response to the allegations in the second sentence in Paragraph 54, St. Francis admits that it requested an additional $3 million deposit that CHSPSC was obligated to provide to St. Francis under the terms of the Letter Agreement; however, St. Francis denies that it "continued to intentionally hide the HUD-OIG audit."  St. Francis disclosed the HUD-OIG audit to CHSPSC on at least two separate occasions and as early as April 2015.  St. Francis denies all allegations in Paragraph 54 not expressly admitted.

55.     In response to the first sentence in Paragraph 55, St. Francis admits that CHSPSC was obligated to fund at least an additional $3 million pursuant to the terms of the Letter Agreement, and admits that during the June 30, 2015 meeting, CHSPSC's CEO, Wayne Smith, stated that such additional funding had already been approved.  St. Francis denies all other

allegations in the first sentence in Paragraph 55.  St. Francis denies the allegations in the second sentence in Paragraph 55.  St. Francis denies the allegations in the third sentence in Paragraph 55.  St. Francis denies all allegations in Paragraph 55 not expressly admitted.

56.     St. Francis denies the allegations in Paragraph 56.

57.     In response to the first sentence in Paragraph 57, St. Francis admits that John Bodine called Ken Hawkins on July 10, 2015 and informed him that HUD-OIG had recently informed St. Francis that HUD-OIG would release its draft report in the coming days.  St. Francis denies that this was the first time it informed CHSPSC of the HUD-OIG audit; St. Francis disclosed the audit to CHSPSC on at least two occasions and as early as April 2015.  St. Francis denies the second sentence in Paragraph 57.  In response to the third sentence in Paragraph 57, St. Francis admits that, following the call on July 10, 2015, CHSPSC requested that St. Francis summarize the findings in the HUD-OIG draft report.  St. Francis denies all allegations in Paragraph 57 not expressly admitted.

58.     St. Francis denies the allegations in Paragraph 58.

59.     St. Francis admits the allegations in the first sentence in Paragraph 59.  In response to the second sentence in Paragraph 59, St. Francis admits that Cooper and Howard stated that CHSPSC was disappointed that the audit was not disclosed.  In response to the third sentence in Paragraph 59, St. Francis admits that Madison responded to Cooper and Howard stating that she thought CHSPSC already knew about the audit; however, Madison did not apologize for not disclosing the audit (which had previously been disclosed to CHSPSC on at least two occasions).  St. Francis denies all allegations in Paragraph 59 not expressly admitted.

60.     In response to the first sentence in Paragraph 60, St. Francis admits that Bodine emailed Ken Hawkins, but the allegations in Paragraph 60 misconstrue the email, which is a

written document that speaks for itself.  St. Francis denies the second sentence in Paragraph 60.

St. Francis denies all allegations in Paragraph 60 not expressly admitted.

61.     In response to the first sentence in Paragraph 61, St. Francis admits that it

uploaded the January 7, 2015 HUD-OIG audit letter to the CHSPSC data room on July 14, 2015.

Through inadvertence, the letter was not uploaded prior to July 14, 2015.  As of July 14, 2015,

due diligence was ongoing and several due diligence items had not been completed.  In addition,

St. Francis disclosed the HUD-OIG audit to CHSPSC on at least two prior occasions and as early

as April 2015.  In response to the second sentence in Paragraph 61, St. Francis admits that

CHSPSC made the initial $5 million deposit prior to July 14, 2015, but denies all other

allegations in the second sentence in Paragraph 61.  St. Francis denies the allegations in the third

sentence in Paragraph 61.  St. Francis denies all allegations in Paragraph 61 not expressly

admitted.

62.     St. Francis admits the allegations in the first sentence in Paragraph 62.  In

response to the second sentence in Paragraph 62, St. Francis admits that Todd told Hawkins and

Cooper that he regretted that CHSPSC's CEO, Wayne Smith, was surprised by the audit but that

it had been disclosed to CHSPSC previously.  He also emphasized that St. Francis informed

CHSPSC of the HUD-OIG draft report within two days of the learning of the report.  Todd

further emphasized that HUD had informed both St. Francis and CHSPSC that CHSPSC would

be carved out of any liability to St. Francis resulting from the audit.  St. Francis denies all

allegations in Paragraph 62 not expressly admitted.

63.     In response to Paragraph 63, St. Francis admits that it was precluded by HUD-

OIG from sharing the information in the draft report but otherwise denies all allegations in

Paragraph 63.

64.     In response to Paragraph 64, St. Francis denies that the HUD-OIG audit was "new, material information" because St. Francis had previously disclosed the audit to CHSPSC on at least two occasions and as early as April 2015.  St. Francis further states that, by July 20, 2015, CHSPSC had already been informed by HUD that CHSPSC would be carved out of any liability resulting from the HUD-OIG audit.  St. Francis admits that CHSPSC requested other modifications to the Term Sheet.  St. Francis denies it hid material information.  St. Francis denies all allegations in Paragraph 64 not expressly admitted.

65.     St. Francis denies the allegations in Paragraph 65.

66.     In response to Paragraph 66, St. Francis states that the return of the Initial Deposit is governed by the Letter Agreement, which is a written document that speaks for itself as to its content and legal effect.  St. Francis denies all allegations in Paragraph 66 that are inconsistent with the terms of the Letter Agreement.

67.     St. Francis denies the allegations in Paragraph 67.

## COUNT I – FRAUD

68.     In response to Paragraph 68, St. Francis adopts and incorporates its responses to Paragraphs 1 through 67 of the Complaint as if fully stated herein.

69.     St. Francis denies the allegations in Paragraph 69.

70.     St. Francis denies the allegations in Paragraph 70.

71.     St. Francis denies the allegations in Paragraph 71.

72.     St. Francis denies the allegations in Paragraph 72.

73.     St. Francis denies the allegations in Paragraph 73.

74.     St. Francis denies the allegations in Paragraph 74.

75.     St. Francis denies the allegations in Paragraph 75.

## COUNT II – BREACH OF CONTRACT

76.     In response to Paragraph 76, St. Francis adopts and incorporates its responses to Paragraphs 1 through 75 of the Complaint as if fully stated herein.

77.     In response to Paragraph 77, St. Francis admits that the Letter Agreement is a valid and binding contract between CHSPSC and St. Francis and that it speaks for itself as to its content and legal effect.

78.     St. Francis denies the allegations in Paragraph 78.  In further response to Paragraph 78, St. Francis states that the Court dismissed CHSPSC's claim for breach of the Letter Agreement based on the alleged failure to return the Initial Deposit.

79.     In response to Paragraph 79, St. Francis admits that the Letter Agreement is a written document that speaks for itself as to its content and legal effect.  St. Francis denies all allegations in Paragraph 79 that are inconsistent with the terms of the Letter Agreement.

80.     St. Francis denies the allegations in Paragraph 80.

81.     St. Francis denies the allegations in Paragraph 81.

82.     St. Francis denies the allegations in Paragraph 82.

## COUNT III – FEES AND EXPENSES OF LITIGATION

83.     In response to Paragraph 83, St. Francis adopts and incorporates its responses to Paragraphs 1 through 82 of the Complaint as if fully stated herein.

84.     St. Francis denies the allegations in Paragraph 84.

85.     St. Francis denies the allegations in Paragraph 85.

## PRAYER FOR RELIEF

St. Francis denies that CHSPSC is entitled to any remedy or relief sought in the Prayer for Relief.

* * *

St. Francis denies all allegations not specifically admitted herein, including all allegations contained in any unnumbered headings, subheadings, or subparagraphs.

* * *

## AFFIRMATIVE DEFENSES

St. Francis asserts the following separate defenses without assuming the burden of proof that otherwise would rest with CHSPSC:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

CHSPSC's claims are barred because St. Francis acted lawfully and in good faith at all times relevant to CHSPSC's Complaint.

### THIRD DEFENSE

CHSPSC's claims are barred or diminished by St. Francis's right of setoff and/or recoupment.

### FOURTH DEFENSE

CHSPSC's claims are barred by the doctrines of estoppel, laches, unclean hands, waiver, acquiescence, and/or ratification.

### FIFTH DEFENSE

CHSPSC's fraud claims are barred by the economic loss doctrine.

### SIXTH DEFENSE

CHSPSC's claims are barred by the express language of the Letter Agreement.

<u>SEVENTH DEFENSE</u>

CHSPSC's claims are barred by the statute of frauds and/or the parol evidence rule.

<u>EIGHTH DEFENSE</u>

CHSPSC's claims are barred because CHSPSC failed to satisfy conditions precedent to bringing this action.

<u>NINTH DEFENSE</u>

If CHSPSC sustained any damages as alleged in the Complaint, which St. Francis specifically denies, then CHSPSC failed to mitigate those damages.

\* \* \*

St. Francis reserves the right to assert, and hereby gives notice that it intends to rely upon, any other defenses that may become available during discovery, and St. Francis hereby reserves the right to amend its Answer to assert any such defenses.

\* \* \*

WHEREFORE, St. Francis respectfully requests judgment in its favor on each count in CHSPSC's Complaint and requests that the Court enter an Order:

(a) dismissing CHSPSC's Complaint in its entirety and with prejudice;

(b) awarding St. Francis its costs and expenses (including reasonable attorneys' fees) in defending this action; and

(c) awarding St. Francis any further and additional relief as the court deems just and fair.

Respectfully submitted this 24th day of November, 2015.

/s/ Kathleen M. Campbell
William N. Withrow, Jr.
Georgia Bar No. 772350
Pete Robinson
Georgia Bar No. 610658
J. Nick Phillips
Georgia Bar No. 986208
Kathleen M. Campbell
Georgia Bar No. 839699
TROUTMAN SANDERS LLP
600 Peachtree Street NE, Suite 5200
Atlanta, Georgia 30308
(404) 885-3000

Attorneys for Defendant St. Francis Hospital, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **DEFENDANT ST. FRANCIS HOSPITAL'S ANSWER TO CHSPSC'S COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 24th day of November, 2015.

/s/ *Kathleen M. Campbell*
Kathleen M. Campbell
Georgia Bar No. 839699